UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEOW N. TSENG,<br><br>Plaintiff,<br><br>v.<br><br>HOME DEPOT USA, INC. and WAL-MART STORES, INC.,<br><br>Defendants. | CASE NO. C05-0908RSM<br><br>ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION |

## INTRODUCTION

This matter comes before the Court on plaintiff's Motion for Preliminary Injunction. (Dkt. #17). Plaintiff asks the Court to issue an injunction preventing defendants, Home Depot and Wal-Mart, from importing and offering for sale certain holiday products that utilize allegedly infringing Christmas tree light components. As discussed below, plaintiff argues that he meets all elements of the standard necessary to receive a preliminary injunction.

Defendants respond that plaintiff fails to demonstrate a likelihood of success on the merits because he has not shown infringement and he cannot overcome their challenges to the validity and unenforceability of the patents, and he cannot demonstrate irreparable harm. Defendants also ask the Court to strike certain material from consideration on this motion.

ORDER
PAGE – 1

For the reasons set forth below, the Court agrees with defendants and DENIES plaintiff's motion for preliminary injunction.

## II. DISCUSSION

**A. Background**

Plaintiff, Jeow N. Tseng, a citizen of Taiwan, is the inventor of socket and light bulb fasteners for Christmas light strings. Plaintiff is also the inventor of a moisture-resistant light bulb socket and holder for Christmas light strings. Plaintiff has received several U.S. Patents for his inventions, including U.S. Patent No. 4,943,899 ("the '899 patent"), U.S. Patent No. 4,970,632 ("the '632 patent"), and U.S. Patent No. 5,816,862 ("the '862 patent"). Only the '632 and '862 patents are at issue in the instant motion.

Plaintiff owns and operates a Taiwanese company, Chyi Yuen Enterprises Co., Ltd. ("Chyi Yuen"), which is the exclusive licensee of plaintiff's patented lights. Under that license, Chyi Yuen manufactures several variations of the patented lights, and incorporates those lights into products sold at wholesale. Chyi Yuen also manufactures the lights for others to incorporate into light strings and lighted displays.

Plaintiff accuses defendants, Home Depot and Wal-Mart, of importing and offering for sale, a number of products that incorporate Christmas tree lights containing components that allegedly infringe on plaintiff's patented lights ("accused products"). The accused products include the Home Depot Garland, Home Depot Canadian Pine, Home Depot Spruce, and Wal-Mart Wreath.

Plaintiff asserts that he first became aware that defendants were selling a limited quantity of the accused products during the 2003 holiday season. In response, plaintiff apparently advised defendants of his patents, and demanded that defendants cease and desist importing and/or selling those products. However, during the 2004 holiday season, defendants apparently

ORDER
PAGE – 2

imported and sold additional quantities of the accused products.  In 2005, defendants then apparently increased their purchases of accused products for that year's holiday season due to popularity of those products, and due to the fact that the those products could be purchased for a lower price than the patented lights through a Hong Kong supplier called Polytree Hong Kong Co., Ltd.  As a result, plaintiff filed the instant patent infringement action.

Shortly after the action was filed, Polytree's counsel contacted plaintiff's counsel and the parties began settlement discussions.  The parties apparently reached an agreement, and plaintiff's counsel notified the Court that this case had settled.  The Court issued its standard Order of Dismissal, advising the parties of a 60-day time period in which either party could move to reopen the action should the settlement agreement fail to be perfected.  During that 60-day period, plaintiff moved to reopen, arguing that the parties could not perfect a settlement.  The Court subsequently granted the motion, and the case was re-opened on November 29, 2005.  The instant motion for preliminary injunction followed.

**B. Defendants' Motions to Strike**

As a threshold matter, the Court first addresses defendants' motions to strike.

*1. William Tseng's Declaration*

Defendants originally moved the Court to strike William Tseng's Declaration in its entirety because it was not signed by the declarant himself.  Instead, it was signed by his father, and plaintiff in this action, Jeow N. Tseng.  (Dkt. #18).  Plaintiff responded that the wrong signature page had been submitted to the Court in error, and he resubmitted the correct signature page.  (Dkt. #35).  That page is signed "Tseng, Wei-Jen," which is presumably William Tseng.  Plaintiff argues that defendants have not been prejudiced by the error because the declaration itself remains the same, and therefore, the declaration should not be stricken.

While the Court agrees that defendants have not been prejudiced by the incorrect signature

ORDER
PAGE – 3

page, the Court notes that the new signature page continues to be flawed because it contains no date of execution. Defendants have renewed their motion to strike the declaration for that reason. Plaintiff responds that the fact that the signature page contains no date is of no import, as long as the Court can ascertain the date from the facts submitted to the record. *See EEOC v. World's Finest Chocolate, Inc.*, 701 F. Supp. 637, 639 (N.D. Ill. 1988).

Pursuant to 28 U.S.C. § 1746, sworn declarations must be signed and dated. By the very language of William Tseng's declaration, it appears to have been executed outside of the United States. Therefore, 28 U.S.C. § 1746(1) applies.

In *World's Finest Chocolate*, *supra*, the District Court for the Northern District of Illinois explained that even though there is a statutory requirement to date declarations submitted into the record, substantial compliance with the statute is sufficient for admissibility. *World's Finest Chocolate*, 701 F. Supp. at 639. Federal courts have generally followed that rule, as long as the time period of the signature is demonstrable from the record. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002); *Pieszak v. Glendale Adventist Med. Ctr.*, 112 F. Supp.2d 970, 999 (C.D. Cal. 2000).

Here, while there is no exact date of signature indicated on the declaration, the declaration clearly states the time frame December 2005. Courts have held that such approximate date of signature constitutes substantial compliance with 28 U.S.C. § 1746. *See, e.g., Pieszak*, 112 F. Supp.2d at 999 (declining to strike a declaration when the approximate date comprising of the month and year of the signature was supported by the record). Accordingly, the Court declines to strike the declaration of William Tseng.

*2. Timothy Boller Declaration*

Defendants also ask the Court to strike in part the Declaration of plaintiff's counsel, Timothy Boller, because it contains conclusory attorney argument that "masquerades" as expert

ORDER
PAGE – 4

opinion, as well as conclusory factual statements, which are improper in support of the motion for preliminary injunction.

In *Jamaica Ash v. Ferguson*, 85 F. Supp.2d 174, 182 (E.D.N.Y. 2000), the United States District Court for the Eastern District of Washington declined to enter a preliminary injunction where the only "evidence" submitted for many of the factual contentions was counsel's affidavit. The court reminded the parties that an attorney's statement and argument is not evidence. Accordingly, the Court agrees with defendants that all of Mr. Boller's conclusory factual assertions regarding infringement in his declaration should be stricken, and they will not be considered by this Court on plaintiff's motion for preliminary injunction.

**C. Standard of Review for Preliminary Injunctions in Patent Cases**

To obtain a preliminary injunction in a patent case pursuant to 35 U.S.C. § 283, the Court considers a party's showing on four factors: (1) reasonable likelihood of success on the merits, (2) irreparable harm, (3) the balance of hardships, and (4) the impact of the injunction on the public interest. *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *Hybritech, Inc. v. Abbott Lab.*, 849 F.2d 1446 (Fed. Cir. 1988); *Nautilus Group, Inc. v. Icon Health & Fitness, Inc.*, 308 F. Supp. 2d 1198, 1207 (D. Wash. 2003) (citing *T.J. Smith & Nephew Ltd v. Consolidated Medical Equip., Inc.*, 821 F.2d 646, 647 (Fed Cir. 1987). "None of the four factors is dispositive; the district court must weigh each and consider the form and severity of the relief requested. Moreover, 'if a preliminary injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify denial.'" *Alliance Research Corp. v. Telular Corp.*, 859 F. Supp. 400, 402 (D. Cal. 1994) (quoting *FMC Corp.*, 3 F.3d at 427)).

On the other hand, the district court should also remember "that a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys.*

ORDER
PAGE – 5

*Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993), *cert. denied*, 114 S. Ct. 923 (1994).  With these guidelines in mind, the Court turns to each of those four elements.

**D.  Reasonable Likelihood of Success on the Merits**

Defendants argue that plaintiff has failed to show a likelihood of success on the merits for several reasons.  Each of those arguments will be addressed separately.

*1. Enjoining Future Conduct*

Defendants first argue that the purpose of an injunction is to enjoin future conduct, and only one of the accused products will actually be imported and/or sold in the future.  Thus, defendants assert that only the Home Depot Spruce is relevant to the motion for preliminary injunction.  Defendants also ask that the Court consider their proposed "Design 2" for potential infringement issues.

The Court finds that this argument really goes to the issue of irreparable harm and will address it further below in that context.  In addition, the Court also notes that it will not discuss any potential infringement issues pertaining to Design 2, as plaintiff has not asked for a preliminary injunction on that design.

*2. Infringement*

Defendants next argue that plaintiff has failed to prove infringement by a preponderance of the evidence, and therefore, his preliminary injunction motion should be denied.  Federal courts have consistently held that "[a] patentee does not have to demonstrate that it will certainly prove infringement.  Rather, it need demonstrate only that it is likely to prove infringement at trial." *Alliance Research Corp.*, 859 F. Supp. at 403 (citing *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987)).  However, defendants argue, and the Court agrees, that plaintiff has failed to meet that standard.

Determining patent infringement is a two-stage process for the Court.  First the Court

ORDER
PAGE – 6

1  must construe the claims at issue.  This is a pure question of law for the Court, even if the case
2  is designated to go to a jury trial.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.
3  Cir. 1995).  After the claims have been properly construed, the fact-finder will compare the
4  claims to the allegedly infringing product or process.  The comparison is conducted on an
5  element-by-element basis.

6  To determine the scope of the claims at issue, the Court will first look to intrinsic evidence
7  – the claims themselves, the specifications contained in the patent, and the prosecution history of
8  the patent.  *Metabolite Laboratories, Inc. v. Laboratory Corp. of America Holdings*, 370 F.3d
9  1354, 1373 (Fed. Cir. 2004).  Intrinsic evidence is "the most significant source of the legally
10 operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d
11 1576, 1582 (Fed. Cir. 1996).  A court may also consider extrinsic evidence such as expert
12 testimony, other unrelated patents or technical documents, or other relevant evidence; however,
13 the Federal Circuit Court of Appeals has cautioned against the courts' reliance on extrinsic
14 evidence in certain situations.  *See Vitronics*, 90 F.3d at 1583 (explaining that when the intrinsic
15 evidence alone will resolve any disputed claim term, it is improper to rely on extrinsic evidence);
16 *but see Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999)
17 (finding that extrinsic evidence should be considered by the court even where the claim language
18 appears to be clear); *Plant Genetic Systems, Inc. N.V. v. DeKalb Genetics Corp.*, 315 F.3d
19 1335, 1346 (Fed. Cir. 2003) (holding that *Vitronics* does not bar the courts from ever
20 considering extrinsic evidence, and finding trustworthy extrinsic evidence appropriate, and even
21 preferred, for consideration).

22 Claim construction must always remain focused on the actual language of the patent claim.
23 *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1201-02 (Fed. Cir. 2002); *In re*
24 *Hiniker Co.*, 150 F.3d 1362, 1269 (Fed. Cir. 1998) (quoting Rich, J., "the name of the game is

25
26 ORDER
   PAGE – 7

the claim."). There is a "heavy presumption" in favor of the ordinary meaning of the words in the term. *Resonate, Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1364 (Fed. Cir. 2003). Definitions found in dictionaries, encyclopedias and treatises can be helpful in determining such ordinary meaning. *See, e.g., Texas Digital Systems, supra*, at 1202; *see also Golight, Inc. v. Wal-Mart*, 355 F.3d 1327, 1331 (Fed. Cir. 2004); *Riverwood Int'l Corp. v R.A. Jones & Co.*, 324 F.3d 1346, 1357 (Fed. Cir. 2003).

Claims are also read in light of the patent specifications. Terms must be used the same way in both the claims and the specification. However, the specification must not be used to read requirements or limitations into the claim that are not there as a result of the words in the claims themselves. *Texas Digital*, 308 F.3d at 1204. Furthermore, the Federal Circuit has "cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification." *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1328 (Fed. Cir. 2002).

When considering the effect of the prosecution history on the disputed claim terms, the Court may use arguments made to the PTO during the patent application process to help interpret the claim language. However, the prosecution history cannot be used to limit the scope of a claim "unless the applicant took a position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of the relevant subject matter." *Schwing GmbH v. Putzmeister AG*, 305 F.3d 1318, 1324 (Fed. Cir. 2002).

With these principles in mind, the Court turns to the Claims at issue in this case.

### a. Claim 1 of the '632 Patent

In the instant case, plaintiff has alleged that all of the accused products infringe on Claim 1 of the '632 patent. Although plaintiff also refers to Claim 2 of that patent, he makes no specific arguments pertaining to the alleged infringement of that Claim. Accordingly, the Court restricts

ORDER
PAGE – 8

its analysis to Claim 1.

Claim 1 of the '632 patent reads:

> A socket and bulb snap fastener for Christmas tree light strings, comprising a socket and a bulb, said bulb comprising a lighting element and an insert having two leads mounted thereon which are electrically connected to said lighting element, a hole being centrally formed on said socket for receiving said insert, the improvements further comprising:
> at least one substantially T-shaped tongue of insulating material being formed on an upper margin of a periphery of said socket, each T-shaped tongue having a shoulder formed adjacent to a free end of said T-shaped tongue, a V-shaped groove being formed on an upper side of each said T-shaped tongue at an end opposite to said free end of said tongue and extending transversely across a length of each said tongue;
> a corresponding number of flexible receiving means of insulating material being formed, relative to each T-shaped tongue, in the vicinity of an upper margin of said insert, each receiving means comprising two mirror image L-shaped protrusions which together form a compartment and a path slightly less wide than the width of said T-shaped tongue, each said T-shaped tongue being engageable with each corresponding receiving means by bending said T-shaped tongue upwardly about said V-shaped groove and snapping each said T-shaped tongue into said compartment via a corresponding path such that said shoulder of each said T-shaped tongue abuts an upper surface of both said protrusions.

(Dkt. #16, Ex. A at Col. 3, Lns. 36-49 and Col. 4, Lns. 1-17).

Plaintiff offers no proposed construction for this Claim. Instead, he argues that the plain language of the Claim and accompanying patent specifications and illustrations, along with photographs of the patented product and accused products, clearly demonstrate infringement.

The Court finds that based on the plain language of the Claim, plaintiff has failed to show a likelihood of success on the merits of his literal infringement allegation at this time. Specifically, the Court points to the claim limitation set forth in column 4, line 7, which requires that each "receiving means" comprises of "two mirror image L-shaped protrusions. . .". Defendants' accused products do not contain such receiving means. Instead, the products utilize C-shaped protrusions. There is nothing in the claim language or specifications that suggests that "L-shaped" also means "C-shaped." Furthermore, defendants provide expert opinions in

ORDER
PAGE – 9

support of their argument that "L-shaped" means "L-shaped," and therefore, the C-shaped protrusion does not infringe on the claim.  Because plaintiff has provided no other proposed construction of the term, and because nothing in the claim language itself, the specifications or the illustrations suggests that "L-shaped" means something other than "L-shaped," the Court finds that plaintiff has failed to show a likelihood of success on the merits of his literal infringement allegation at this time.  *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003) (explaining that if even one limitation of a claim is not met by an accused device, either literally or by equivalents, there is no infringement as a matter of law).

Likewise, the Court finds that plaintiff has failed to demonstrate a likelihood of success on the merits of his infringement allegations based on the doctrine of equivalents.  "Under this doctrine, a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."  *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 21 (1997).  Equivalence may be found where the relevant part of the accused product performs the same function in the same way to achieve the same result as the corresponding element in the patent claim.  Alternatively, equivalence may also be found where the differences between the relevant part of the accused product and the corresponding element in the patent claim are insubstantial.  *Id.* at 39-40.

There are limitations, however, to the doctrine of equivalents.  One such limit is the principle of vitiation, whereby applying the doctrine would broaden the meaning of the claim limitation so much that it would lose its effect and thereby render the limitation in the claim meaningless.  Thus, the principle of vitiation, if applicable, precludes reaching the factual function-way-result question under the doctrine of equivalents.

In the instant case, plaintiff argues in conclusory fashion that the accused products are

ORDER
PAGE – 10

equivalent to the product claimed by the '632 patent. Specifically, plaintiff states that the accused products utilize two mirror image protrusions which together form a compartment and a path slightly less wide than a width of the T-shaped tongue. However, the Court finds under the principle of vitiation that allowing such an equivalence would broaden the "L-shaped" limitation so much that it would become meaningless. Essentially, allowing any-shaped dual mirror image protrusions to read on the "L-shaped" limitation, would render the words "L-shaped" meaningless, and the limitation itself would lose its effect. Thus, the Court finds that plaintiff has failed to show a likelihood of success on the merits of his equivalents argument at this time.

### b. Claim 1 of the '862 Patent

Plaintiff also alleges that three of the accused products infringe on Claim 1 of the '862 patent. Claim 1 of the '862 patent reads:

> A light bulb socket holder comprising:
> a tubular socket having at least two conducting elements on opposite sides of a bottom face thereof;
> a cylindrical hollow holder for tightly receiving said tubular socket having at least two connecting plates securely attached to a face of an inner periphery and at least two separate wires securely connected with said connecting plates; and
> a plug integrally formed with said tubular socket and configured and sized to fill a gap between said wires.

(Dkt. #16, Ex. B at Col. 4, Lns. 2-12).

Based on a photographic illustration of the similarities between the products at issue, plaintiff asserts that three of the accused products, the Home Depot Garland, Home Depot Canadian Pine and Wal-Mart Wreath, literally infringe on Claim 1 because they comprise all elements of the claim.

Defendants completely fail to respond to any argument pertaining to the Home Depot Garland. Accordingly, on this record, it appears that plaintiff may be able to succeed on his

ORDER
PAGE – 11

1  literal infringement claim with regard to that product.

2  Likewise, defendants completely fail to respond to any argument pertaining to the Wal-
3  Mart Wreath.  Accordingly, on this record, it appears that plaintiff may be able to succeed on his
4  literal infringement claim with regard to that product.

5  With regard to the Home Depot Canadian Pine, defendants argue that the light and socket
6  utilized in that product are not configured and sized to fill into a gap between the wires.
7  Defendants submit their proposed construction of the claim, along with expert testimony in
8  support of their argument.  The Court finds that argument persuasive.  Accordingly, the Court
9  finds that plaintiff has failed to show a likelihood of success on the merits with regard to his
10 claim of literal infringement as to the Canadian Pine.  Furthermore, while plaintiff asserts that the
11 product also infringes under the doctrine of equivalents, he provides no specific argument or
12 authority in support of that assertion.  Therefore, the Court finds that plaintiff has also failed to
13 demonstrate a likelihood of success on the merits of his equivalents claim.

14                                                    c. Validity

15 Defendants next argue that plaintiff cannot demonstrate a likelihood of success on the
16 merits because he cannot overcome their challenges to validity.  Plaintiff correctly notes that a
17 patent is presumed valid.  35 U.S.C. § 282; *H.H. Robertson, Co.*, 820 F.2d at 388 (explaining
18 that a motion for preliminary injunction must be evaluated "in the context of the presumptions
19 and burdens that would inhere at trial on the merits.").  However, that "presumption does not
20 relieve a patentee who moves for a preliminary injunction from carrying the normal burden of
21 demonstrating that it will likely succeed on all disputed liability issues at trial, even when the
22 issue concerns the patent's validity." *New England Braiding Co. v. A.W. Chesterton Co.*, 970
23 F.2d 878, 882 (Fed. Cir. 1992).  Accordingly, "while it is not the patentee's burden to prove
24 validity, the patentee must show that the alleged infringer's defense [to validity] lacks substantial

ORDER
PAGE – 12

merit." *Id.* at 883; *Alliance Research Corp.*, 859 F. Supp. at 402.

Defendants first assert that the '862 patent is invalid because it was anticipated by Japanese Utility Model Patent 46-24080 issued to Ito ("Ito '080") in 1971. They rely on their experts' analysis of Ito '080, arguing that Ito '080 discloses each and every element of Claim 1 of the '862 patent. Plaintiff argues that defendants have failed to address all of the limitations in the Ito patent, in particular the "two part stanchion 4 and 4" in Claim 1 of the Ito patent and additional limitations of Claims 2 and 3 of the Ito patent, and therefore have failed to raise a material question regarding validity based on anticipation at this time.

Anticipation is a question of fact. *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1369 (Fed. Cir. 2003). It is defendants' burden to prove anticipation by clear and convincing evidence. *See* State Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1067 (Fed. Cir. 2003) (explaining that "[a] party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence."). Because defendants have failed to discuss all of the limitations in the Ito '080 patent, the Court finds that they have not produced clear and convincing evidence of anticipation at this time.

Defendants next argue that the '862 patent is also invalid because the claimed design is obvious. Defendants assert that in light of the Pan '343 patent, Ehrman '741 patent and Ito '080 patent, the plug limitation contained in Claim 1 of plaintiff's '862 patent would have been obvious to one of ordinary skill in the art. Defendants support this argument with their proposed claim construction and expert testimony.

The Federal Circuit has made clear that there is no basis for concluding that an invention would have been obvious solely because it is a combination of elements that were known in the art at the time of the invention. *See Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549,

ORDER
PAGE – 13

1556, 225 U.S.P.Q. (BNA) 26, 31 (Fed. Cir. 1985). Instead, the relevant inquiry is whether there is a reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success. *See, e.g., In re Dow Chem. Co.*, 837 F.2d 469, 473 (Fed. Cir. 1988). Such a suggestion or motivation may come from the references themselves, from knowledge by those skilled in the art that certain references are of special interest in a field, or even from the nature of the problem to be solved. *See In re Rouffet*, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573 (Fed. Cir. 1996).

Defendants have produced the declarations of two experts who testify that the plug limitation is obvious to one of ordinary skill in the art. Although parts of the declarations simply reiterate phrases from the standard set forth above, and announce that the plug limitation was obvious, the experts clearly set forth the reason, suggestion and motivation that would lead one of ordinary skill in the art to combine the references for a successful invention.

Plaintiff provides no support for his rebuttal arguments, other than his counsel's conclusory factual statements, which have since been stricken from consideration. Thus, defendants have at least preliminarily established why one of ordinary skill would have found it obvious to combine the claim limitations in a particular way to achieve the '862 invention, and plaintiff has not shown that the defense lacks substantial merit.

For the same reasons, the Court is also persuaded that defendants have at least preliminarily established why one of ordinary skill would have found it obvious to combine the claim limitations in the Japanese Utility Model S61-16879 of Makida, Stefanelli '615 patent and Davis '387 patent, in a particular way to achieve the '632 invention., and that plaintiff has failed to show that the defense lacks substantial merit.

d. Inequitable Conduct

ORDER
PAGE – 14

1    Finally defendants argue that the '632 patent is unenforceable because of plaintiff's
2  inequitable conduct during prosecution of that patent.

3    Patent applicants have a duty to prosecute their proposed patents with candor and good
4  faith, including a duty to disclose information known to the applicants to be material to
5  patentability. 37 C.F.R. § 1.56(a) (2004); see also *Molins PLC v. Textron, Inc.*, 48 F.3d 1172,
6  1178 (Fed. Cir. 1995).  A breach of this duty may constitute inequitable conduct, which can
7  arise from an affirmative misrepresentation of a material fact, failure to disclose material
8  information, or submission of false material information, coupled with an intent to deceive or
9  mislead the Patent Office.  *Molins*, 48 F.3d at 1178.  A party asserting that a patent is
10 unenforceable due to inequitable conduct must prove materiality and intent by clear and
11 convincing evidence.  *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872
12 (Fed. Cir. 1988).  Once threshold findings of materiality and intent are established, the trial court
13 must weigh them to determine whether the equities warrant a conclusion that inequitable
14 conduct occurred.  *Molins*, 48 F.3d at 1178.  The Federal Circuit has instructed that this
15 requires a careful balancing.  When the misrepresentation or withheld information is highly
16 material, the amount of proof needed to establish the requisite intent lessens.  *See N.V. Akzo v.*
17 *E.I. DuPont de Nemours*, 810 F.2d 1148, 1153 (Fed. Cir. 1987).  In contrast, the less material
18 the information, the greater the proof must be.  *See id.*

19   In the instant case, defendants argue that plaintiff's failure to discuss his pending '899
20 patent application during the prosecution of his '632 patent application constitutes inequitable
21 conduct.  However, defendants assert only in conclusory fashion that the '899 was "highly
22 material to the prosecution of the '632 patent" and fail to discuss the intent element at all.
23 Therefore, defendants have failed to produce clear and convincing evidence of either materiality
24 or intent to deceive.  Accordingly, defendants have failed to raise a substantial question as to

unenforceability based on inequitable conduct.

### 2. Irreparable Harm

At this time, the Court finds that plaintiff has failed to adequately demonstrate irreparable harm. First, plaintiff relies solely on William Tseng's declaration as evidence of the irreparable harm he would suffer if the injunction does not issue. However, there is no evidentiary support for the conclusory statements of harm contained in the declaration. For example, Mr. Tseng speculates that defendants' activities will threaten Chyi Yuen's market share and reputation, and will encourage other infringers to enter the market, but provides no evidence that any of this is actually happening. Mr. Tseng produces no sales numbers, amount of money lost, or any other documentary evidence demonstrating that defendants' actions are contributing to Chyi Yuen's alleged losses rather than legitimate business competition.

Second, and more importantly, defendants' counsel has avowed that only one of the accused products will be sold in the future. Plaintiff does not address how that changes any impact on Chyi Yuen's market share, or amount of money projected to be lost. In addition, plaintiff fails to demonstrate to the Court that a monetary award could make plaintiff whole should he succeed on the merits of his claims. Accordingly, at this time, the Court finds that plaintiff has not adequately demonstrated the irreparable harm necessary for a preliminary injunction.

### 3. Balance of Hardships and the Public Interest

Plaintiff's alleged hardship consists of wholly unsubstantiated assertions of lost market share, lost profits, and lost good will amongst its current customers. While the public interest certainly favors the protection of patentees and their patent rights, in this case there appears to be no hardship tipping in favor of plaintiff which would persuade the Court to enter a preliminary injunction. As discussed above, only one accused product is planned for sale during

ORDER
PAGE – 16

the 2006 holiday season, and plaintiff has provided no evidence that monetary damages could not make him whole if he were to succeed on the merits of his claims.

### III. CONCLUSION

For the reasons set forth above, the Court finds that plaintiff has not met the necessary requirements for a preliminary injunction. The Court DENIES plaintiff's motion (Dkt. #17), and declines to issue an injunction at this time.

DATED this 2nd day of March, 2006.

*(signature)*
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE – 17